**THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | |
|---|---|
| William A. Dittmann<br>        Plaintiff, | Case No. |
| **v.** | |
| Xerox Corporation, ACS Human Services, and Quest<br>Diagnostics, Inc.,<br>        Defendants. | **TRIAL BY JURY DEMANDED** |

**COMPLAINT**

*Jurisdiction and Venue*

1.     This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e et seq. ("Title VII"), the Genetic Information Nondiscrimination Act of 2008 (42

USCS §§ 2000ff et seq.), The Health Insurance Portability and Accountability Act (42 USCS §

1320d et seq.), The Age Discrimination in Employment Act (the "ADEA"), and The Americans

with Disabilities Act (42 USC § 12101 et seq.)

2.     This Court has subject matter jurisdiction of the action under 28 U.S.C. §§ 1331,

1343.

3.     Venue is proper in this court because:

a.   the unlawful employment practices and civil rights violations alleged in this

complaint have been, and now are being committed within the Northern District of the State of

Indiana;

b.   the Defendants are entities with the capacity to sue and be sued in their common

names under applicable Indiana laws and subject to the court's personal jurisdiction with respect

1 of 9

to this civil action and venue is proper pursuant to 28 USCS § 1391; and

    c.   the Plaintiff resides in this district.

*Parties*

4.       Plaintiff, William A. Dittmann, lives in Lake County, Indiana.

5.       Xerox Corporation, ACS Human Services, and Quest Diagnostics, Inc. each have principal places of business in Indiana and regularly transact business in the state.

6.       Defendants are employers subject to the provision of Title VII in that they are each a corporation, or agents thereof, affect interstate commerce, and have employed 50 or more persons for each working day in each of 12 or more calendar weeks in the current or preceding calendar year.

7.       Defendants are and at all material times have been a companies authorized or organized and existing under laws of the State of Indiana, with offices located in Lake County, Indiana.

*Conditions Precedent*

8.       Prior to the institution of this action, Plaintiff, claiming to be aggrieved, filed charges of discrimination against the Defendants with the Equal Employment Opportunity Commission ("EEOC"), the charging documents are attached hereto as Exhibit 1.

9.       The Commission investigated these charges and issued to Plaintiff right to sue notices, the notices are attached hereto as Exhibit 2.

10.     All conditions precedent to the institution of this action have been fulfilled.

*Factual Background*

11.     Defendants are companies with several thousand employees.

12.   Xerox is an affiliate of ACS Human Services LLC ("ACS").

13.   Xerox has a significant input into the health insurance decision of ACS and the access of Plaintiff to the benefits of those decisions.

14.   Quest diagnostics, Inc. was hired by Xerox to provide access to the benefits of health insurance via, among other means, its online computing systems and its clinics.

15.   Mr. William A. Dittmann ("Plaintiff") is an employee of Defendant ACS Human Services LLC ("ACS") and participates in the company's health insurance program.

16.   Together and individually, the Defendants significantly affect Plaintiff's access to employment benefits including the benefits of health insurance coverage.

17.   Plaintiff is not a nicotine user.

18.   Plaintiff is over 40 years old.

19.   Plaintiff, due to his age, is more likely to suffer from chronic diseases than other younger and similarly situated employees of Xerox.

20.   Defendants have implemented, by themselves and by and through their agents, a wellness program (the "Punitive Program").

21.   In 2014, Plaintiff was required by the Punitive Program to take a nicotine test (the "Test") or pay a surcharge of $500 per year.

22.   Defendants offered Plaintiff $1,200.00 as an incentive for he and his spouse to submit to medical inquiries and complete a screening assessment.

23.   On December 1, 2014,  Defendants put in place procedures that would assess Plaintiff a $500.00 surcharge for not participating in the Test, without Plaintiff's consent.

24.   Without Plaintiff's consent, Defendants shared the Plaintiff's personal information

related to the Test, the screening assessment and Plaintiff's health insurance charges and fees with third parties.

25.    Plaintiff was required by Defendants to complete an online questionnaire as well as completing the Test.

26.    Plaintiff was not allowed to add his dependent spouse to his insurance without her also taking the Test and completing the questionnaire.

27.    The questionnaire included questions that are wholly unrelated to the nicotine screening including questions related to ones physical abilities and disabilities.

28.    The questions on the questionnaire include questions about Plaintiff's family and family history as well as questions related to Plaintiff's own genetics ("Genetic information").

29.    In order to take the Test, Defendants required Plaintiff to agree to indemnify Xerox's agent Quest Diagnostics, Inc.

30.    In order to take the Test, Defendants required Plaintiff to agree to submit to the jurisdiction of New Jersey.

31.    In order to take the Test, Defendants required Plaintiff to allow a third party to electronically access his private information by placing computer tracking software ("Cookies") on his private computer system.

32.    In order to take the Test, Defendants required Plaintiff to allow a third party to share his personal health information with other third parties for reasons not related to the Test.

33.    Defendants refused Plaintiff's request for an accommodation to review the questionnaire before completing the questionnaire.

34.    Defendants refused Plaintiff's request for an accommodation to take an alternative

nicotine test ("Reasonable Alternative") which tested solely for nicotine.

35.     At the time of the discrimination Plaintiff had passed all necessary requirements to participate in Xerox's health insurance program.

36.     Defendants advised Plaintiff of procedures to wage an appeal regarding these matters affecting his private medical information, inter alia.

37.     Plaintiff filed a written appeal through Defendants' appeal process complaining of the discrimination and other wrongful acts of the Defendants. (Ex. A to Exhibit 1).

38.     Defendants failed to reply or otherwise act on Plaintiff's appeal though they regularly reply or otherwise act on the appeals of other younger non-protected employees that are similarly situated.

39.     When the defendants reported the nicotine status of the Plaintiff along with his personal identification information, Defendants knowingly disclosed uniquely identifying health and other medical information of the Plaintiff to private insurance carriers, data processors, and other unknown entities and individuals without his consent and for their own commercial gain in violation of privacy laws including without limitation 42 USCS § 1320d-6.

40.     In retaliation for Plaintiff's having filed an appeal pointing to the Defendants' discrimination and other wrongful acts, Defendants intentionally ignored Plaintiff's appeal.

41.     In retaliation for Plaintiff's having filed an appeal and an EEOC complaint pointing to the Defendants' discrimination and other wrongful acts, Defendants intentionally altered the plaintiff's job benefits and demanded he take unreasonable computer security measures while he was off duty.

42.     Because of the Defendants' discrimination and other wrongful acts, Plaintiff has

been damaged monetarily.

43.     Because of the Defendants' discrimination and other wrongful acts, Plaintiff has been defamed by the Defendants who have published him to the public as being a nicotine user and damaged him thereby.

44.     After the Defendants ignored Plaintiff's appeal and then deemed Plaintiff to be a nicotine user, Plaintiff began to be held out in the public eye as being a smoker or having private information that he did not want to share and therefore must be hiding something of a negative sort; the Defendants are believed to have advised Plaintiff's colleagues and Defendants' third party vendors of the Plaintiff's complaint of discrimination and caused the colleagues and vendors to treat Plaintiff differently and with disdain, at different times and with a cumulative effect, and over the course of days thereby creating a hostile work environment.

45.     The Defendants communicated to others that the plaintiff is a nicotine user, which tends to lower a person's reputation, all the while knowing that plaintiff was not a nicotine user.

46.     Due to Defendants' actions, Plaintiff is in fear of losing his job and files this Complaint with much trepidation.

47.     At all material times, the Defendants have been and are intentionally engaging in discriminatory action against Plaintiff who has expressed opposition to Defendant's unlawful employment practices in violation of Title VII, GINA and the ADAAA. These retaliatory policies and practices include, but are not limited to:

a.   Failure and refusal to grant Plaintiff equal terms and conditions of employment as compared to similarly situated non-protected employees.

b.   Actual, pre-textual, and constructive reduction of the employment benefits of

plaintiff.

48.     These employment practices are unlawful employment practices that discriminate and are in violation of Title VII, GINA and the ADAAA among others.

49.     The defendants' knowingly made false communications that have defamed the Plaintiff, pursuant to Indiana laws, and caused him great harm.

50.     As a direct, proximate, and foreseeable result of Defendants' direct, indirect, unintentional, careless, reckless, negligent, unreasonable, malicious, callous, intentional, willful and/or knowing actions of Defendants acting within the course and scope of their duties and/or employment, individually and in concert, William Dittmann suffered damages and continues to sustain harm.  His damages include those which justify the awarding of liquidated (exemplary) damages in favor of William Dittmann against the Defendants, individually or jointly; and an award in favor of William Dittmann and against the Defendants, individually or jointly, for his attorney fees, expert witness fees and other costs associated in filing this Complaint.

51.     William Dittmann has incurred costs and expenses to file this action against Defendants to protect his constitutional and statutory rights. He has suffered general emotional distress, general mental pain and suffering, humiliation, embarrassment to name, character and reputation, decreased employability, loss of employment benefits due to the actions and inactions of the defendants by their agents, servants, supervisors, administrators, human resources and/or employees acting within the course and scope of their employment.

52.     In addition, the above acts by Defendants, and their agents, servants, supervisors, administrators, human resources and/or employees acting within the course and scope of their duties and/or employment, individually and in concert, were willful, wanton, malicious,

intentional and oppressive, and justify the awarding of actual, compensatory and/or punitive damages in favor of William Dittmann against Defendants and an award in favor of Plaintiff and against the defendants for his attorney fees, expert witness fees and other costs associated in filing this Complaint.

*Jury Demand*

53.    COMES NOW the Plaintiff, William A. Dittmann, by counsel, and demands trial by jury.

WHEREFORE, premises considered, the Plaintiff, by counsel, requests that this Court issue 1) A decree ordering the defendants to make Plaintiff whole, including, but not limited to, providing financial compensation, and restitution in an amount to be proved at trial, and by providing other affirmative relief necessary to eradicate the effects of the Defendant's past and present unlawful employment practices; 2) A Judgment for the Plaintiff for his actual, compensatory and punitive damages; 3) An award to the Plaintiff for his reasonable attorney fees and costs in this action; 4) An award to the Plaintiff for prejudgment interest at the statutory rate; 5) A Judgment for the Plaintiff compensating him for the general emotional distress and humiliation plaintiff has suffered as a result of defendants' unlawful conduct; and 6) An order for all other relief that is necessary and proper.

Respectfully submitted,

/s/Daniel Zamudio
Daniel Zamudio, Patent Attorney
Zamudio Law Professionals, PC
233 South Colfax
Griffith, Indiana 46319
Phone (219) 924-2300

Fax (219) 924-2401
dan@zlawpro.com