UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| WILLIAM A. DITTMANN, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | CAUSE NO. 2:16-cv-16-PPS-PRC |
|  | ) |  |
| ACS HUMAN SERVICES LLC, XEROX | ) |  |
| CORPORATION, and QUEST | ) |  |
| DIAGNOSTICS, INC., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

OPINION AND ORDER

This employment-related dispute centers around a wellness program that required employees to provide certain medical information or potentially face an annual surcharge. William Dittmann did not provide the medical information for participation in the program and the results of that decision gave rise to this action against Dittmann's employer (ACS Human Services), his employer's affiliate (Xerox Business Services, LLC), and an alleged agent of Dittmann's employer (Quest Diagnostics, Inc.). Dittmann alleges violations of a bevy of federal employment-related statutes. This matter presently is before me on a Motion to Compel Arbitration filed by Xerox Business Services and ACS [DE 27], and Defendant Quest Diagnostics' Motion to Dismiss the Second Amended Complaint [DE 39]. Because my rulings on these two motions will decide the trajectory of this action, I will address them together.

**Background**

The facts come from the second amended complaint, which I accept as true for present purposes. William A. Dittmann is an employee of ACS Human Services and participates in the company's health insurance program. [DE 35 at ¶17.] Xerox Business Services is an affiliate of ACS and has significant input into its health insurance decisions and benefits and Dittmann's access to those benefits. [*Id.* at ¶13.] For ease of reference, I will refer to Xerox Business Services and ACS collectively as Xerox. The precise relationship between Xerox and Quest is murky. According to the second amended complaint, Quest was authorized by Xerox to provide employees access to health insurance information via, among other means, its online computer systems. [*Id.* at ¶14.] That's about all we know about the relationship.

Xerox implemented a wellness program and, in 2014, Dittmann was required by the program to take a nicotine test or pay a surcharge of $500 per year. [*Id.* at ¶¶20-21.] Dittmann alleges that the test did not only test for nicotine but also tested for other health related items that were not related to Xerox's business. [*Id.* at ¶22.] Dittmann alleges that in order to take the test, Defendants required him to: 1) agree to indemnify Quest; 2) agree to submit to the jurisdiction of New Jersey; 3) allow a third party to electronically access his private information by placing computer tracking software (known as "Cookies") on his private computer system; and 4) allow a third party to share his personal health information with third parties for reasons not related to the test. [*Id.* at ¶¶23-26.] Dittmann and his spouse were offered $1,200 as an incentive to

submit to medical inquiries and complete a screening assessment. [*Id.* at ¶27.] But Dittmann was not allowed to add his spouse to his insurance unless she took the test and completed the assessment. [*Id.* at ¶29.]

On December 1, 2014, Xerox put in place procedures that would assess Dittmann a $500 surcharge for not participating in the test. [*Id.* at ¶28.] In response, Dittmann visited a Quest clinic in Crown Point, Indiana "in an attempt to receive his employee benefits and remove the nicotine surcharge from his paycheck" and asked that he only be tested for nicotine use and be exempt from filling out the screening assessment; at the very least he wanted to see the screening assessment before agreeing to complete it. [*Id.* at ¶¶33-34.] Quest refused to allow Dittmann to review the screening assessment and also refused to allow him to only be tested for nicotine. [*Id.* at ¶¶35-36.] As a result of Dittmann's refusal to take the full test and complete the screening assessment, he was labeled by Quest as a smoker, when he claims that he is not. [*Id.* at ¶¶ 18, 44.]

Dittmann claims that he filed a written appeal through Xerox's appeal process, which went ignored by Xerox. [*Id.* at ¶¶49-50.] Dittmann alleges that Xerox regularly acts on the appeals of other younger employees. [*Id.* at ¶51.] He claims that the Defendants communicated to "others" that he is a nicotine user, "which tends to lower a person's reputation," despite knowing that he was not. [*Id.* at ¶53.] He claims that as a result of this communication, he will always carry the stigma of being a smoker, particularly with insurance companies. [*Id.* at ¶54.]

Dittmann also claims that he was retaliated against for filing an appeal and an EEOC complaint, which resulted in Xerox intentionally altering Dittmann's benefits and demanding he take unreasonable computer security measures while he was off duty. [*Id.* at ¶¶58-60.] He alleges that as a result of the Defendants actions, he has been "held out in the public eye as being a smoker or having private information that he did not want to share and therefore must be hiding something of a negative sort" and this has caused Dittmann's colleagues and vendors to treat him differently and create a hostile work environment. [*Id.* at ¶61.]

Dittmann brought this action against ACS, Xerox Business Services, and Quest alleging violations of Title VII of the Civil Rights Act of 1964, the Genetic Information Nondiscrimination Act of 2008, the Health Insurance Portability and Accountability Act, the Age Discrimination in Employment Act, and the Americans with Disabilities Act,[1] as well as a state law claim of defamation. [DE 35.] ACS and Xerox Business Services seek to compel Dittmann to submit his claims to arbitration, arguing that he improperly brought this suit in violation of their Dispute Resolution Plan, which Dittmann accepted as a condition of his employment with ACS in September 2013. [DE 26.] For its part, Quest seeks the outright dismissal of the suit on the grounds of failure to state a claim. [DE 38.]

---

[1]In paragraph 1 of the second amended complaint, Dittmann makes reference to a claim under the ADA, however there does not appear to be a specific count of the second amended complaint pursuant to the ADA.

4

**Discussion**

I will begin with the motion to compel arbitration. When Dittmann was hired by Xerox (working for ACS Human Services) he signed an employment agreement clumsily named the "Agreement to Be Bound By the Xerox Business Services Dispute Resolution Plan and Rules ("DRP") Otherwise Referred to as the Offeree Arbitration Agreement or 'Agreement.'" [DE 27-1 at 38.] There are two documents at issue. There is the actual Dispute Resolution Plan, which I'll call the DRP, and then there is an acknowledgment document signed by Dittman wherein he acknowledges receiving the DRP. I will refer to this latter document as the "DRP Acknowledgment." The DRP Acknowledgment states in relevant part:

> Having been accepted for employment and as part of my acceptance, I CONSENT TO THE EXCLUSIVE **FINAL AND BINDING RESOLUTION BY ARBITRATION** UNDER THE DRP **OF ALL DISPUTES (as defined in the DRP) INCLUDING LEGAL CLAIMS**, past, present or future, arising out of, relating to, or concerning my employment with Xerox Business Services, LLC ("XBS"). . . . Further, **the Arbitrator, and not any federal, state, local court or agency shall have the exclusive authority to resolve any Dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement including but not limited to any claim that all or part of this Agreement is void or voidable.**
>
> . . .
>
> The promises by XBS and me to arbitrate Disputes constitute adequate and sufficient consideration to support this Agreement and the DRP. I understand that acceptance of this Agreement and the DRP are conditions of my employment. . . . **I UNDERSTAND THAT THIS AGREEMENT AND THE DRP REQUIRE THAT DISPUTES REGARDING THE MATTERS SUBJECT TO THIS AGREEMENT BE**

5

**SUBMITTED TO ARBITRATION RATHER THAN A JUDGE AND/OR JURY IN COURT AND . . . I AM GIVING UP ANY RIGHT I MIGHT OTHERWISE POSSESS TO HAVE A JURY OR JUDGE TRIAL.**

[DE 27-1 at 38-40 (emphasis in original).] The DRP Acknowledgment notes that Dittmann received and read the DRP and the DRP Acknowledgment. [DE 27-1 at 41.] The DRP contains the following language:

> Employment . . . or continued employment, and other valuable consideration after the applicable Effective Date of the DRP constitute consideration and consent to be bound by the DRP, including its mandatory arbitration provisions, by the Applicant and/or Employee, on the one hand, and the Company, on the other hand, during and after the employment relationship. Submission of an application, regardless of form, for employment constitutes consent by both the Applicant and the Company to be bound by the DRP, as well as consideration.

[DE 27-1 at 18.]

So reading these together, Dittman agreed to be contractually bound by the DRP and its arbitration provisions. The DRP specifically provides that prior to resolution by binding arbitration, the parties may use any of Xerox's informal dispute resolution options, or that any dispute involving a legally protected right, may, at the request of any party, proceed directly to arbitration. [*Id.* at 15.] The DRP goes on to state that:

> All Disputes not otherwise resolved by the Parties shall be finally and conclusively resolved through arbitration under this DRP, instead of through trial before a court (including a jury trial). The Parties forego any right they may have to a bench trial or jury trial on a Dispute.

6

[*Id.*] The DRP defines "Dispute" as "all legal and equitable claims, demands, and controversies, of whatever nature or kind, whether in contract, tort, under statute regulation, or ordinance, or some other law." [*Id.* at 13.] Such disputes include "any challenges regarding the interpretation, applicability, or enforceability, of the DRP or any agreement to arbitrate under its terms including but not limited to any claim that all or part of the DRP or the arbitration agreement is void or voidable." [*Id.*] Such disputes also expressly include:

> [a]ny other matter related to . . . the Employee and the Company alleging violation of any federal, state or other governmental law , statute, regulation, or ordinance . . . including but not limited to the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, the American s with Disabilities Act . . . including . . . unlawful retaliation . . . discrimination . . . [and] defamation.

[*Id.*]

All of this is to say that if Dittmann has an employment related dispute with Xerox, he is required by the DRP and the DRP Acknowledgment to arbitrate that issue, rather than file a case in federal court. *And* to the extent that Dittmann challenges the enforceability of the DRP and/or the DRP Acknowledgment, he is required to bring *that* dispute to arbitration. But he did not, and now I find the parties improperly before me on claims expressly enumerated in the DRP as those that Dittmann is contractually required to arbitrate.

Xerox tells me that its counsel reminded Dittmann of his contractual obligation to arbitrate and made multiple requests to voluntarily transfer the case against Xerox to

7

arbitration, but Dittmann refused, indicating that he would only arbitrate if Quest, a non-signatory to the DRP Acknowledgment, agreed to arbitrate, arguing that the DRP does not require him to arbitrate disputes against Xerox if a third party is named. [DE 27 at 5.] Dittmann maintains this argument in his response to Xerox's motion to compel. [DE 29 at 3-4.] But this argument is misplaced because Xerox Business Services and ACS moved to compel arbitration against them and *only* them, not Quest. The argument proffered by Dittmann—that the joinder of a non-signatory to an otherwise arbitrable dispute would defeat a party's contractual obligation to arbitrate —is in direct contrast to "a liberal federal policy favoring arbitration" requiring courts to enforce arbitration agreements according to their terms and look with disfavor at rules that interfere with arbitration. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011); *see also German Am. Fin. Advisors & Trust Co. v. Reed*, 969 N.E.2d 621, 628 (Ind. Ct. App. 2012) (holding that a signatory to an arbitration agreement was equitably estopped from opposing a motion to compel arbitration on the grounds that its claims were both against a signatory and non-signatory).

While Dittmann responds to the motion to compel by also arguing that the DRP is illegal and unenforceable, he does not contest that this issue must be decided by an arbitrator, not the Court. That is because he *cannot* contest this point because the DRP expressly states that "any challenges regarding the interpretation, applicability, or enforceability, of the DRP or any agreement to arbitrate under its terms including but not limited to any claim that all or part of the DRP or the arbitration agreement is void

or voidable" is a "Dispute" that must be arbitrated. [DE 27-1 at 13, 15.] For these reasons, I grant Xerox Business Services and ACS' motion to compel arbitration and order Dittmann to submit his claims against Xerox Business Services and ACS to arbitration.

The DRP expressly states that its terms are governed by the Federal Arbitration Act ("FAA"). [DE 27-1 at 12, 14.] The FAA provides that once the court finds that arbitration should be compelled, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the application for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Xerox, however, asserts that notwithstanding the language of 9 U.S.C. § 3, I should dismiss Dittmann's claims against Xerox Business Services and ACS, rather than stay the action. Even though the Seventh Circuit has not directly addressed this issue, it has affirmed district courts' dismissals of suits when a court finds that all of the claims are arbitrable. *See Hornbuckle v. Xerox Bus. Servs., LLC*, No. 3:14-CV-00089-RLY, 2015 WL 631399, at *4 (S.D. Ind. Feb. 13, 2015) (collecting cases). Because I find that the issues raised in this dispute, including the enforceability of the DRP and the DRP Agreement itself, are covered by the DRP and to be decided to the arbitrator, and it is in the interest of judicial economy, I conclude that dismissal without prejudice of all claims against Xerox Business Services and ACS is the appropriate remedy.

There is one final issue to deal with regarding the motion to compel and that is Xerox's request for attorneys fees pursual to Federal Rule of Civil Procedure 11(b). [DE

9

27 at 16-17.] Rule 11 authorizes sanctions against a party or attorney who files frivolous pleadings, files pleadings for an improper purpose such as to harass, or makes allegations that they know have no basis in law or fact. The purpose of Rule 11 is to deter baseless filings in the district court. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). In determining whether Rule 11 sanctions are warranted, the Court must "undertake an objective inquiry into whether the party or his counsel should have known that his position was groundless." *Cuna Mut. Ins. Soc. v. Office and Prof'l Employees Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006) (quoting *CNPA v. Chicago Web Printing Pressmen's Union No. 7* , 821 F.2d 390, 397 (7th Cir. 1987)). Dittmann should have pursued his claims against Xerox through arbitration, but his position regarding the effect of Quest's involvement in the activities giving rise to Dittmann's claims as well as its relationship with Xerox, was not completely groundless. It is at least plausible to argue that since Quest was a player in the events giving rise to this dispute, and potentially an agent of Xerox, it would not make sense to arbitrate without Quest and potentially have duplicative parallel arbitration and litigation in federal court. For these reasons, I deny Xerox's request for fees.

This brings me to Quest's motion to dismiss all claims against it. Recall that Dittmann brought claims against Quest under Title VII, GINA, HIPAA, and the ADA, as well as a defamation claim under Indiana state law.[2] Quest has moved to dismiss for

---

[2] Dittmann's ADEA claim only is alleged as to Xerox. [DE at ¶52.] I again note that while Dittmann makes reference to a claim under the ADA, there does not appear to be a specific count of the second amended complaint pursuant to the ADA. For purposes of deciding this motion, however, that is of no matter because any ADA claim

10

failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal quotation marks and citations omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). I must accept as true all factual allegations in the second amended complaint and draw all reasonable inferences in favor of the plaintiff, but I am not required to accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft*, 556 U.S. at 663.

The viability of the majority of Dittmann's claims hinge on his relationship with Quest, specifically whether or not Quest was his employer under the applicable federal laws. GINA and the ADA define employer as it is defined for purposes of Title VII in section 2000e(b). *See* 42 U.S.C. § 2000ff(2)(B); 42 U.S.C. § 12111(5). There is no dispute that Dittmann never actually was employed by Quest, but Dittmann argues that he may sue Quest as an agent of Xerox. While, the Seventh Circuit has acknowledged that "Title VII plaintiffs may maintain a suit directly against an entity acting as the agent of an employer," it notes that they may do so "only under certain circumstances." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 669 (7th Cir. 2013). Agency liability in the Title VII context has been recognized where the agent "exercise[s] control over an important aspect of [the plaintiff's] employment, where the agent significantly affects access of any individual to employment opportunities, or where an employer delegates sufficient

---

suffers from the same deficiency as the majority of Dittmann's other federal claims as discussed in this Opinion and Order.

control of some traditional rights over employees to a third party." *See id.* (internal citations and quotations omitted).

Dittmann has not sufficiently alleged any of these circumstances here. Dittmann asserts the general and conclusory allegation that Quest is an agent of Xerox and an employer for purposes of disability discrimination, age discrimination, genetic information, and employment discrimination under Title VII [DE 35 at ¶15], but as noted above the only facts alleged regarding this relationship are that "Quest Diagnostics, Inc. was authorized by Xerox Business Services, LLC to provide access to Xerox's employee health benefits via, among other means, its online computing systems and its clinics" [*Id.* at ¶14].

These allegations are insufficient for Dittmann to assert any of his federal employment-related claims against Quest on an agency theory that is plausible on its face. Quite frankly, I have way too many questions about the relationship between Xerox and Quest. For example, it's unclear what Quest does—is it a health care provider, does it administer tests that companies use to determine the health of their employees for purposes of health benefits, or does it only run an informational website allowing individuals to access information regarding their health coverage through their employer? For what services did Xerox contract with Quest? Is Quest the only company that Xerox used for these contracted-for service, or could employees go elsewhere? What authority, if any, did Quest have in actually determining the availability of benefits to Xerox employees? Did Quest share any administrative responsibilities with Xerox in terms of the actual administration of its health benefits?

12

There are just too many questions left unanswered for me to accept Dittmann's summary conclusion that Quest is Xerox's agent under the relevant federal laws.

Nor has Dittmann sufficiently alleged facts to support his position that Quest, as Xerox's agent, is his employer under the Seventh Circuit's common law test to determine whether a person is an employee, which relies on general principles of agency. *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 549 (7th Cir. 2002). That test requires the court to consider:

> 1) the extent of the employer's control and supervision over the worker, (2) the kind of occupation and nature of skill required, (3) which party has responsibility for the costs of operation, such as the provision of equipment and supplies and the maintenance of the workplace, (4) the source of payment and benefits and (5) the duration of the job.

*Id.* Dittmann failed to allege sufficient facts to enable me to even *attempt* this analysis. For these reasons, Dittmann's claims against Quest pursuant to Title VII, GINA, and the ADA are dismissed.

Dittmann's HIPAA claim against Quest also must be dismissed because that statute does not provide a private right of action. *See Lundell v. Laport Regional*, No. 3:10-CV-013-JD, 2013 WL 633319, at *2 (N.D. Ind. Feb. 20, 2013). Only the Secretary of Health and Human Services or the Attorney General of a state may bring an enforcement action under HIPAA. *See* 42 U.S.C. § 1320d et seq. Dittmann's invitation to reassess the sufficiency of the remedy under HIPAA is one that I will not accept at this time.

Finally, I'm left with Dittmann's lone remaining claim against Quest, a state law claim for defamation. Seventh Circuit precedent and the principle of comity encourage me to relinquish supplemental jurisdiction over a state law claim once all federal claims have been dismissed. *See* 28 U.S.C. § 1367(c)(3); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 502 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.") 28 U.S.C. § 1367(c)(3) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." Having dismissed all of Dittmann's federal claims against Quest, I decline to exercise my supplemental jurisdiction over his defamation claim. I will note, however, that even if I decided to exercise jurisdiction over this claim, I am not convinced that Dittmann sufficiently pleaded the requisite facts to state a claim for defamation under Indiana law, including what was said, by whom, and to whom. *See Trail v. Boys & Girls Clubs of Nw. Indiana*, 845 N.E.2d 130, 136 (Ind. 2006) ("But even under notice pleading, a plaintiff must still set out the operative facts of the claim."); *see also Newman v. Jewish Cmty. Ctr. Assn. of Indianapolis*, 875 N.E.2d 729, 736 (Ind. Ct. App. 2007) ("[T]he plaintiff must also identify the speaker of those [alleged defamatory] statements.").

While this Opinion and Order dismisses all claims against Quest, I will give Dittmann a final opportunity to replead his claims against Quest to the extent that he believes he is able to cure the legal deficiencies discussed above and state plausible claims. Dittmann must file his amended complaint within 28 days of the date of this

14

Opinion and Order. If he does not intend to do so, he should advise the Court and I will then issue another order dismissing the case with prejudice.

## CONCLUSION

For the aforementioned reasons, the Court:

- **GRANTS IN PART** and **DENIES IN PART** Xerox Business Services, LLC and ACS Human Services' Motion to Compel Arbitration [DE 26], **COMPELS** William Dittmann to arbitrate his claims against Xerox Business Services, LLC and ACS Human Services, and **DISMISSES WITHOUT PREJUDICE** all claims against Xerox Business Services, LLC and ACS Human Services;

- **GRANTS** Quest Diagnostics, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint [DE 38] and **DISMISSES WITHOUT PREJUDICE** all claims against Quest Diagnostic, Inc.; and

- **GRANTS** William Dittmann leave to file an amended complaint within 28 days of this Opinion and Order. If he does not intend to do so, he should advise the Court.

**SO ORDERED**.

ENTERED: September 26, 2016

                                         _s/ Philip P. Simon_
                                         **PHILIP P. SIMON, CHIEF JUDGE**
                                         **UNITED STATES DISTRICT COURT**