UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| WILLIAM A. DITTMANN, | ) |
| :--- | :--- |
| Plaintiff, | ) ) ) |
| v. | ) CAUSE NO. 2:16-cv-16-PPS-PRC ) |
| ACS HUMAN SERVICES LLC, XEROX CORPORATION, and QUEST DIAGNOSTICS, INC., | ) ) ) ) ) |
| Defendants. | ) |

OPINION AND ORDER

Xerox Corporation has a wellness program that, among other things, encourages employees to stop using tobacco. It seems like a sensible thing to do. This employment-related dispute centers around that program and the fact that it requires Xerox employees to provide health-related information or otherwise face an annual surcharge to the cost of their employee benefits. William Dittmann did not provide the medical information for participation in the program and the results of that decision gave rise to this action against Dittmann's employer (ACS Human Services), his employer's affiliate (Xerox Business Services, LLC), and an alleged agent of Dittmann's employer (Quest Diagnostics, Inc.). Dittmann alleges violations of a bevy of federal employment-related statutes.

I previously sent the case against ACS and Xerox to arbitration based on Dittmann's employment agreement. I also granted him leave to amend his Second Amended Complaint to address deficiencies in his claims against Quest. Dittmann

amended his Second Amended Complaint making the operative complaint his Third Amended Complaint, of which Quest now seeks dismissal. The central issue is whether Quest is Dittmann's employer for purposes of liability under several federal statutes. If it is not, then this case is going nowhere and must be dismissed. I conclude that because Dittmann has once again failed to adequately allege facts that plausibly show that Quest was his employer, the complaint is once again dismissed, but this time the dismissal is with prejudice.

**Background**

The facts come from the Third Amended Complaint, which I accept as true for present purposes. William A. Dittmann is an employee of Xerox and participates in the company's health insurance program. [DE 51 at ¶21.] Permit me to pause at this point to point out an inconsistency between Dittmann's Second Amended Complaint and the now operative Third Amended Complaint. In the Second Amended Complaint, Dittmann alleged he was an employee of ACS. But in the present complaint he alleges he is in employee of Xerox. [*Compare* DE 35 at ¶17 *with* DE 51 at ¶21.] Because Dittmann alleges and refers to his employer as Xerox in the Third Amended Complaint, I will refer to Xerox as his employer for purposes of this opinion but, as we will see in a moment, whether Dittmann's employer is ACS or its affiliate, Xerox, makes no difference to the viability of Dittmann's claims against Quest.

The precise relationship between Xerox and Defendant Quest still remains somewhat murky despite Dittmann's attempt to bulk up his factual allegations in the

2

Third Amended Complaint. According to the Third Amended Complaint, Quest became an agent of Xerox when it was hired via a written contract to manage and monitor its employees' health benefits. [*Id.* at ¶15.] Dittmann alleges that Quest "controlled access to employee health benefits for Xerox employees . . . via, among other means, Quest's online computer systems." [*Id.* at ¶16.] The new version of the complaint alleges that Quest "provides customizable screening, reporting, and other wellness solutions tailored to fit the needs of Xerox" and "helps manage the ins and outs of the unique wellness screening program such that it accomplishes the goals established by Xerox." [*Id.* at ¶¶19-20.]

This lawsuit centers around Xerox's wellness program that, among other things, encourages employees to stop using tobacco. Because Dittmann's description of Xerox's program, as it is described in his complaint, is a little confusing and, at times, somewhat misleading, I will refer to the exhibits that he attached to the Third Amended Complaint, which outline the program. Dittmann's Third Amended Complaint alleges that Xerox put the program in place in December 2014 and so I will, therefore, described the program as outlined in the 2015 Incentive Overview, which is dated August 2014, and which is attached to the Third Amended Complaint as Exhibit 9. [DE 51-1 at 46.]

Starting in 2015, Xerox assesses a $500 tobacco surcharge to every employee and their covered spouse/domestic partner enrolled in a Xerox medical plan. [*Id.* at 47.] In order to remove this surcharge, Xerox requires that each employee and their covered spouse/domestic partner complete an online health questionnaire and participate in a

3

wellness screening. [*Id.*] If the screening indicates use of tobacco, the employee or their covered spouse/domestic can remove the surcharge by enrolling in and completing the free Quit For Life tobacco cessation program. [*Id.*] In addition, by completing the online health questionnaire and wellness screening, the employee and their covered spouse/domestic partner would each receive a $600 wellness incentive to lower their annual plan contributions. [*Id.* at 48.]

It appears from Dittmann's allegations and Xerox's literature that Xerox contracted with Quest to help administer the program. As Xerox's literature explains, employees had the option of completing a wellness screening at a Xerox location, by visiting a Quest Patient Service Center, or by taking a form to their personal doctor. [*Id.* at 50.] In addition, Dittmann alleges that the online health questionnaire was accessed through Quest's online portal. [DE 51 at ¶28.] Xerox's literature explains that:

> [N]o one at Xerox, including the people administering your benefits or maintaining the BenefitsWeb website, can view your personal health information. BenefitsWeb has a protected direct data feed from Quest Diagnostics so only you can view your biometric data. Quest Diagnostics shares aggregate health risk information with Xerox health care partners solely for the purpose of supporting efforts to promote health and wellness. If your results indicate you can benefit from a Xerox wellness program, you may receive a call inviting you to join. Participation in Xerox wellness programs is completely voluntary.

[DE 51-1 at 51.]

Dittmann refused to participate in the Xerox program and take the required tests "due to the excess amount of private medical information that would be disclosed to

4

both Xerox and Quest for no reason related to nicotine testing." [DE 51 at ¶34.] Dittmann alleges that he asked Quest to make an accommodation to allow him to take a nicotine specific test and Quest refused unless he also completed the online health questionnaire. [*Id.* at ¶¶39-40.] In addition, Dittmann alleges that in order to take a nicotine-specific test Defendants required him to: 1) agree to indemnify Quest; 2) agree to submit to the jurisdiction of New Jersey; 3) allow a third party to electronically access his private information by placing computer tracking software (known as "Cookies") on his private computer system; and 4) allow a third party to share his personal health information with third parties for reasons not related to the test. [*Id.* at ¶¶42-45.] As a result of Dittmann's refusal to complete the online health questionnaire and get a wellness screening, the tobacco surcharge remained on his employee record and allegedly "he was labeled as being a smoker" despite the fact that Xerox and Quest knew this information to be false. [*Id.* at ¶¶41, 66, 73.]

Among other things, Dittmann alleges that Xerox and Quest shared his personal information with "third parties" and caused to be reported to "various third parties" his nicotine status along with his personal identification information. [*Id.* at ¶¶67-68.] He alleges that Xerox and Quest communicated to "others" that he is a nicotine user, "which tends to lower a person's reputation," despite knowing that he was not. [*Id.* at ¶85.] He claims that as a result of this communication, he will always carry the stigma of being a smoker, particularly with insurance companies. [*Id.* at ¶87.] In addition,

5

Dittmann also claims that he was retaliated against for filing an appeal, which resulted in a reduction in his employment benefits. [*Id.* at ¶¶92-95-60.]

Dittmann claims that Quest violated Title VII of the Civil Rights Act of 1964, the Genetic Information Nondiscrimination Act of 2008 (GINA), as well as what appear to be claims for defamation and invasion of privacy under Indiana State law, although these are not clearly delineated. [DE 51.] There is also a reference to the Americans with Disabilities Act in paragraph 1 of the Third Amended Complaint and in Dittmann's response to Quest's motion to dismiss. But these are insignificant since there does not appear to be a specific count of the Third Amended Complaint pursuant to the ADA. Quest seeks the outright dismissal of the suit on the grounds of failure to state a claim. [DE 54.]

## Discussion

Quest has moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal quotation marks and citations omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). I must accept as true all factual allegations in the Third Amended Complaint and draw all reasonable inferences in favor of the plaintiff, but I am not required to accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft*, 556 U.S. at 663.

As I discussed in my previous Opinion and Order dismissing without prejudice Dittmann's claims against Quest, the viability of the majority of Dittmann's claims against Quest hinges on his relationship with Quest, specifically whether or not Quest was his "employer." For each of Dittmann's federal claims, that is a necessary element of Dittmann's case. GINA and the ADA define employer as it is defined for purposes of Title VII in section 2000e(b). *See* 42 U.S.C. § 2000ff(2)(B); 42 U.S.C. § 12111(5).

Of course, no one could say with a straight face that Quest was Dittmann's employer. The only argument that Dittmann has is that Quest was an agent of his actual employer, Xerox. It is true that the Seventh Circuit has acknowledged that "Title VII plaintiffs may maintain a suit directly against an entity acting as the agent of an employer," but it cautions that this is a narrow exception and is applicable "only under certain circumstances." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 669 (7th Cir. 2013). Agency liability in the Title VII context has been recognized where the agent "exercise[s] control over an important aspect of [the plaintiff's] employment, where the agent significantly affects access of any individual to employment opportunities, or where an employer delegates sufficient control of some traditional rights over employees to a third party." *See id.* (internal citations and quotations omitted).

Dittmann has not sufficiently alleged any of these circumstances here despite having a second opportunity to do so. Dittmann added a few paragraphs to the Third Amended Complaint to attempt to bulk up facts to support his general and conclusory allegation that Quest is an agent of Xerox and an employer for purposes of disability

7

discrimination, age discrimination, genetic information, and employment discrimination under Title VII, DE 51 at ¶17. These include the conclusory statement that "Quest became an agent of Xerox when Xerox hired Quest via a written contract to manage and monitor its employee's[sic] health benefits," *id.* at ¶15, a new exhibit described as representing that Quest "controlled access to Employee benefits for Xerox employees; health benefits, via, among other means, its online computing systems and its clinics," *id.* at ¶16, and two generalized statements concerning the services that Quest provides, with attached exhibits, *id.* at ¶¶19-20.

But the devil is in the details, and when one looks closer at the exhibits Dittmann included with his Third Amended Complaint to support his allegation that Quest is an agent of Xerox, his theory crumbles. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("In considering a motion to dismiss under Rule 12(b)(6), district courts are free to consider any facts set forth in the complaint that undermine the plaintiff's claim. The freedom includes exhibits attached to the complaint." (internal citations and quotations marks omitted)).

The exhibit that Dittmann points to as establishing Quest's "control of access to employee benefits" is Exhibit 3. (DE 51-1 at 33). It is a Xerox 2017 Incentive Review that, like the 2014 Incentive Review I discussed earlier, discusses a (now) $400 Wellness Incentive for scheduling a Quest wellness screening and completing an online health questionnaire and the removal of the (now) $600 tobacco surcharge by either testing negative for nicotine or testing positive and enrolling in Quit for Life. [*Id.* at 35.]

8

Exhibit 3 states that, like in 2015, a wellness screening can be completed at certain Xerox locations, at a Quest location, or by an employee's personal doctor. [*Id.* at 37.] What seems clear from Exhibit 3, along with the other materials attached to the Third Amended Complaint, is that Quest was hired by Xerox to administer its wellness program, specifically to provide wellness screenings to those who did not want to use their own doctors and to administer and collect the information contained in the online health questionnaire. That's all Quest did.

In addition, while Dittmann is correct that Exhibits 4 and 5 show that Quest offers "customizable screening, reporting, and other wellness solutions . . . [and] help to manage the ins and outs of the unique wellness screening program," the exhibits are not specific to Xerox. Rather, they appear to be general Quest marketing materials pulled from its website. [DE 51-1 at 44, 56.] Dittmann's allegations combined with the exhibits he attached to his Third Amended Complaint show that Quest managed aspects of Xerox's wellness program and, while Quest may have been responsible for administering tests that ultimately affected an employee's ability to remove the tobacco surcharge and/or receive a wellness incentive, it did not control the access to or administration of an employee's actual health benefits.

These allegations are insufficient for Dittmann to assert any of his federal employment-related claims against Quest on an agency theory that is plausible on its face. While I now have a slightly better idea of the relationship between Xerox and Quest than I did before Dittmann amended his complaint, Dittmann's additions to his allegations only serve to convince me that the relationship between the two is not one

9

of agency sufficient to establish that Quest may be considered Dittmann's employer for the purposes of his federal claims.

Under the Seventh Circuit's common law test to determine whether a person is an employee, which relies on general principles of agency, the court must consider:

> 1) the extent of the employer's control and supervision over the worker, (2) the kind of occupation and nature of skill required, (3) which party has responsibility for the costs of operation, such as the provision of equipment and supplies and the maintenance of the workplace, (4) the source of payment and benefits and (5) the duration of the job.

*Hojnacki v. Klein-Acosta*, 285 F.3d 544, 549 (7th Cir. 2002). "Of these factors, the extent of control and supervision over the worker is the most significant in determining the employment status." *Id.* Dittmann alleges no supervision or control by Quest over any aspect of his employment with Xerox such as his work duties and responsibilities, his opportunities for promotions or advancement, or whether he could be disciplined or otherwise performance managed. There is no allegation that Dittmann somehow derived his skills from any relationship with Quest or that Quest was responsible in any way for the costs of Dittmann's employment *or* the wellness program. In addition, there is no allegation that Quest was the source of payment or benefits for Dittmann. While Dittmann alleges that Xerox controlled his access to his employee benefits, it is clear from the Third Amended Complaint and exhibits that Quest provided access to the online health questionnaire, which was part of the steps an employee could take to earn a wellness incentive and remove the tobacco surcharge. Quest did not provide Dittmann's actual health benefits. Finally, Dittmann alleges nothing regarding the

duration of his job at Xerox and how it might be indicative of an employment relationship with Quest. All five factors, therefore, indicate that Quest cannot be considered Dittmann's employer for the purposes of his federal claims.

In sum, despite several opportunities to do so, Dittmann yet again fails to allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face for his federal claims against Quest and it appears that he will never be able to do so. For these reasons, Dittmann's claims against Quest pursuant to Title VII, GINA, and the ADA are dismissed with prejudice.

What remains is Dittmann's state law claims against Quest. Seventh Circuit precedent and the principle of comity encourage me to relinquish supplemental jurisdiction over state law claims once all federal claims have been dismissed. *See* 28 U.S.C. § 1367(c)(3); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 502 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.") 28 U.S.C. § 1367(c)(3) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." Having dismissed all of Dittmann's federal claims against Quest, I decline to exercise my supplemental jurisdiction over his state law claims.

**CONCLUSION**

For the aforementioned reasons, the Court **GRANTS** Quest Diagnostics, Inc.'s Motion to Dismiss Plaintiff's Third Amended Complaint [DE 54] and **DISMISSES WITH PREJUDICE** all claims against Quest Diagnostics, Inc.

**SO ORDERED**.

ENTERED: March 1, 2017

                                             s/ Philip P. Simon
                                             **PHILIP P. SIMON, JUDGE**
                                             **UNITED STATES DISTRICT COURT**